911 F.2d 734
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Millard Kenneth BROWN, Defendant-Appellant.
 No. 89-6281.
 United States Court of Appeals, Sixth Circuit.
 Aug. 23, 1990.
 
 Before MILBURN and RALPH B. GUY, Circuit Judges, and TIMBERS, Senior Circuit Judge.*
 PER CURIAM.
 
 
 1
 Defendant, Millard Brown, was convicted by jury verdict of manufacturing marijuana in violation of 21 U.S.C. Sec. 841(a)(1), possessing a firearm as a convicted felon in violation of 18 U.S.C. Sec. 922(g), and using or carrying a firearm during and in relation to the commission of a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c). On appeal, the defendant challenges the denial of his motion to suppress marijuana and firearms discovered in a warrantless search of his house and car, and contests the sufficiency of the evidence supporting his conviction on the charge of using or carrying a firearm during and in relation to the commission of a drug trafficking crime. Finding no merit in these assignments of error, we affirm.
 
 I.
 
 2
 During a helicopter surveillance flight on August 18, 1988, Tennessee Highway Patrol pilot Mike Dover identified marijuana growing behind a residence in Jackson County, Tennessee. Dover informed Tennessee Alcoholic Beverage Commission Agent Thomas Gothard of his discovery, and Gothard proceeded down a path to a location behind the house where he discovered a large patch of marijuana. Although Agent Gothard initially found no one at the house, defendant Brown's mother eventually arrived by car. Agent Gothard identified himself and explained his discovery of marijuana to Mrs. Brown. After apprising Agent Gothard that she lived in the house, Mrs. Brown told Gothard that her son, Millard, helped her take care of her garden, so Gothard asked Mrs. Brown to summon her son to her house.
 
 
 3
 In response to the telephone call from his mother, Millard Brown drove to his mother's house in a tan pickup truck. Upon the defendant's arrival, Agent Gothard advised him of his constitutional rights but explained that he was not under arrest. Gothard asked the defendant if he knew anything about marijuana growing behind his mother's house, and the defendant denied any knowledge of the marijuana crop. After posing several additional questions about the house and yard, Agent Gothard told the defendant "that I thought it was a shame that someone would grow marijuana behind their parents' residence." The defendant then asked Gothard if he was finished with the questioning, and Gothard said "sure." Shortly thereafter, the defendant went into the house, spoke briefly with another agent, and then left in his pickup truck.
 
 
 4
 After returning to his own house down the road from his mother's residence, Brown dropped off the tan pickup truck and drove away in a black Ford Thunderbird. Meanwhile, pilot Dover notified Gothard and Agent Don Earle that he had observed marijuana growing behind the defendant's house as well as Mrs. Brown's residence. Consequently, Agent Earle and another agent flagged down the defendant as he drove away from his house in the Thunderbird and asked him to return to his residence because marijuana had been found there. Brown complied with the agents' request, and parked the Thunderbird on his neighbor's property near his house. He then spoke with Agents Gothard and Earle in the front yard of his residence. Gothard again read the defendant his rights and requested consent for a search. To substantiate the defendant's consent, Agent Gothard produced a consent to search form stating:
 
 
 5
 I, Millard Kenneth Brown, having been advised of my Constitutional rights under the Fifth Amendment to the Constitution of the United States, and my right to refuse to have search made of the premises/vehicle which is described as follows: at Route 2, Box 109, Gainsboro, Tennessee, a brick basement house, do hereby authorize and grant Tom Gothard and Charles Carter, who identified themselves to me as agents of the Tennessee Alcoholic Beverage Commission to conduct a complete search of the premises/vehicle described above without a search warrant.
 
 
 6
 I realize if any liquor, drugs or other products are found which the proper State tax and permit fees have not been paid under the law, they are contraband and such liquor, drugs, or other contraband to include any vehicle used to transport them, may be confiscated.
 
 
 7
 I also authorize these officers to remove from the above described location any books, records, documents, or other property providing a receipt is issued to me for these items.
 
 
 8
 This written authorization is being given by me freely, voluntarily, without any threats, rewards, promises, having been made to me in return for it.
 
 
 9
 Agent Gothard read the consent form to the defendant, and then handed it to him for inspection. After giving the defendant an opportunity to review the consent form, Agent Gothard "asked him if he understood it" and the defendant answered affirmatively. The defendant then signed the form while sitting with Agents Gothard and Earle in his front yard. Both agents described the defendant as "very cooperative" and at ease during these events, and the defendant himself conceded that he was "kind of excited" but not "scared."
 
 
 10
 After signing the consent form, the defendant voluntarily admitted the agents into his house. As he explained, "I just opened the door and went on in and they started searching." The search of the house conducted by four agents turned up a shotgun hanging over the door on two nails and a gun cabinet that had some long guns in it, a pistol and some marijuana in a vase, marijuana in a five-gallon bucket in one of the bedrooms, blasting caps, scales, and plastic bags. While the search of the house was in progress, two other agents opened the trunk of the Thunderbird and discovered four five-gallon buckets of marijuana. The defendant also gave a short confession to one of the agents at his house. Based upon this evidence, the defendant was charged in a three-count indictment with manufacturing marijuana, unlawfully possessing firearms as a convicted felon, and carrying or using firearms during and in relation to the commission of a drug trafficking offense.
 
 
 11
 Following his indictment, defendant Brown moved to suppress the evidence discovered during the searches of his house and car. The district court held an evidentiary hearing on the motion, resolved all testimonial conflicts in favor of the government, and denied the motion to suppress in its entirety based upon the finding that the defendant's consent to the searches was voluntary. Prompted by the defendant's motion for reconsideration, the district court clarified its position on the legality of the residence and automobile searches. In a two-page written memorandum, the district court explained that consent provided the basis for the warrantless search of the house. With respect to the search of the Thunderbird, which the court found beyond the scope of the defendant's consent, the court ruled that the automobile exception to the warrant requirement justified warrantless inspection of the car's trunk.
 
 
 12
 The district court conducted a jury trial on the three charges against defendant Brown in August of 1989, which resulted in conviction on all three counts. This appeal followed. The defendant raises three arguments for consideration on appeal. First, he asserts that the warrantless search of his house was not supported by valid consent, thereby requiring suppression of all evidence discovered during the search of the premises. Second, he argues that the automobile exception to the warrant requirement cannot be applied in this case to justify the warrantless search of the Thunderbird. Finally, he contends that the record does not contain sufficient evidence to support the conviction for using or carrying a firearm during and in relation to a drug trafficking crime. We shall address these issues individually.
 
 II.
 
 13
 We recently restated the settled proposition that "[w]arrantless searches are per se unreasonable under the fourth amendment, except in a few carefully delineated instances." United States v. Radka, 904 F.2d 357, 360 (6th Cir.1990) (citing Katz v. United States, 389 U.S. 347, 357 (1967)). Among the well-recognized exceptions to the warrant requirement, however, are "searches pursuant to consent" and "automobile searches." See Radka, 904 F.2d at 360 n. 3 (listing "exceptions to the warrant requirement"). The government relies upon consent to justify the search of the defendant's house, and the automobile exception to support the search of the defendant's car. Because the two exceptions are conceptually distinct, the invocation of each exception necessitates independent analysis.
 
 A. Consent to Search
 
 14
 In Illinois v. Rodriguez, 110 S.Ct. 2793 (1990), the Supreme Court commented that although "[t]he Fourth Amendment generally prohibits the warrantless entry of a person's home," this prohibition "does not apply ... to situations in which voluntary consent has been obtained ... from the individual whose property is searched[.]" Id. at ---. When consent is asserted as the justification for a warrantless search, "[t]he government has the burden of showing that consent was not contaminated by any duress, coercion, or trickery." United States v. Buchanan, 904 F.2d 349, 355 (6th Cir.1990). That is, the government must "demonstrate that the consent was in fact voluntarily given." Schneckloth v. Bustamonte, 412 U.S. 218, 248 (1973). "Voluntariness is a question of fact to be determined from all the circumstances," id. at 248-49, including "the defendant's youth, lack of education or low intelligence, the lack of any warnings regarding the accused's constitutional rights, as well as evidence of duress or coercion, such as, deprivation of food or sleep and prolonged detention or questioning." United States v. Jones, 846 F.2d 358, 360 (6th Cir.1988). Because this voluntariness inquiry is factual in nature, " '[t]he district court's findings with regard to voluntariness will not be reversed unless clearly erroneous." United States v. Rose, 889 F.2d 1490, 1494 (6th Cir.1989).
 
 
 15
 Here, most of the pertinent factors identified in Jones support the district court's finding that the defendant voluntarily consented to the search of his residence. The defendant, in his mid-forties and experienced in dealing with law enforcement officials, cannot suggest that his "youth" militates against the district court's finding of voluntariness. Cf. Jones, 846 F.2d at 360 (identifying "youth" as a relevant factor). Additionally, the defendant was apprised of his constitutional rights in accordance with Miranda v. Arizona, 384 U.S. 436 (1966), at both his mother's house and his own residence prior to signing the consent form. Moreover, the consent form that Agent Gothard read to the defendant explicitly notified him of his "right to refuse to have search made" of his house. Finally, the totality of the circumstances offers no suggestion of duress or coercion. The request for consent took place in the defendant's front yard in the immediate presence of only two agents. No extensive interrogation accompanied the request, and the defendant admitted that he did not feel "scared." After signing the consent form, the defendant opened the door to his residence to admit the agents. Under the circumstances, the mere fact that the agents were wearing uniforms and sidearms does not undermine the otherwise wholly voluntary nature of the defendant's consent. The district court's finding to this effect is not clearly erroneous; the resulting denial of the suppression motion concerning the warrantless residence search is
 
 
 16
 AFFIRMED.
 
 B. The Automobile Search
 
 17
 The defendant interposes a two-pronged challenge to the warrantless search of the Ford Thunderbird predicated upon the automobile exception. First, he argues that the agents who conducted the search lacked "probable cause to believe that the car contain[ed] articles that the officers [were] entitled to seize." See Chambers v. Maroney, 399 U.S. 42, 48 (1970) (restating probable cause requirement for warrantless automobile searches devised in Carroll v. United States, 267 U.S. 132 (1925)). The district court found that "there was clearly probable cause for the agents to believe that marijuana may have been in the defendant's automobile." This finding cannot be reversed unless clearly erroneous. See, e.g., United States v. Sargineto-Miranda, 859 F.2d 1501, 1508 (6th Cir.1988). The agents who searched the car knew that marijuana was growing in the yards of both the defendant's house and his mother's house. Also, the agents were aware that the defendant had returned to his house from his mother's residence in his tan pickup and then left the house in the Thunderbird only to be turned back by several agents on the road. Finally, the search of the defendant's house turned up both marijuana and loaded firearms. Under the circumstances, the defendant's use of the Thunderbird suggested an intent to remove the marijuana from the house before agents could locate it. Thus, the district court's finding that the agents who searched the Thunderbird had probable cause to believe that the car contained marijuana is not clearly erroneous.
 
 
 18
 The defendant's second argument--that exigent circumstances did not exist to justify the warrantless search of the Thunderbird--incorrectly presumes that such circumstances are necessary under the automobile exception. In California v. Carney, 471 U.S. 386 (1985), the Supreme Court explained that:
 
 
 19
 The reasons for the vehicle exception, we have said, are twofold. "Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office."
 
 
 20
 Id. at 391 (citations omitted). We interpreted Carney in United States v. Markham, 844 F.2d 366 (6th Cir.), cert. denied, 109 S.Ct. 116 (1988), as an indication that exigent circumstances are not necessary to justify a warrantless vehicle search. Id. at 368-69; accord United States v. Panitz, --- F.2d ---- (1st Cir.1990); United States v. Reis, 906 F.2d 284, ---- (7th Cir.1990). The district court's denial of the defendant's motion to suppress the fruits of the automobile search, therefore, is AFFIRMED.
 
 III.
 
 21
 The defendant challenges the sufficiency of the evidence only with respect to his conviction for using or carrying a firearm during and in relation to a drug trafficking crime. "The standard of review for this ground on appeal is whether 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Martin, 897 F.2d 1368, 1373 (6th Cir.1990) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). The relevant statute, 18 U.S.C. Sec. 924(c)(1), provides in pertinent part:
 
 
 22
 Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....
 
 
 23
 Here, the underlying drug offense as charged in the indictment was manufacturing marijuana. The defendant argues that the evidence adduced at trial failed to link his loaded firearms to the marijuana manufacturing activities for which he was convicted.
 
 
 24
 Four loaded firearms were discovered during the agents' search, and formed the basis for the government's "fortress analogy" theory that the defendant used and carried the weapons to protect his marijuana crop. See, e.g., United States v. Henry, 878 F.2d 937, 944 (6th Cir.1989). A .25 caliber automatic pistol was hidden in the tan pickup truck, and three other firearms were scattered throughout the house--a Mossberg "Persuader" shotgun above the back door, a .22 caliber rifle in a bedroom, and a pistol in the den near the back door. Here, as in Henry, there is ample evidence from which a jury could conclude that the guns "found in various locations" were "to be used to protect the drugs" that the defendant was manufacturing. See id. Although the defendant asserts that he simply had the guns for hunting purposes, the government aptly points out that guns such as the Mossberg "Persuader" can hardly be described as hunting weapons, and the defendant knew that as a convicted felon he could not possess guns for hunting. Moreover, the positioning of several guns near the back door of the defendant's house and a yard light strongly suggests an intent to use the guns to protect the marijuana crop growing behind the house. In sum, we find ample evidence to support the defendant's conviction for using or carrying a firearm during and in relation to a drug trafficking crime.
 
 
 25
 AFFIRMED.
 
 
 
 *
 The Honorable William H. Timbers, United States Court of Appeals for the Second Circuit, sitting by designation