RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0039P (6th Cir.)
File Name: 01a0039p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

*v.*

      No. 99-6180

ROBERT R. HADDIX,
      *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 98-00090—Jennifer B. Coffman, District Judge.

Argued: December 6, 2000

Decided and Filed: February 9, 2001

Before: MARTIN, Chief Judge; JONES and COLE,
Circuit Judges.

_____

## COUNSEL

**ARGUED:** Warren N. Scoville, WARREN N. SCOVILLE & ASSOCIATES, London, Kentucky, for Appellant. John Patrick Grant, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee. **ON BRIEF:** Warren N. Scoville, WARREN N. SCOVILLE & ASSOCIATES, London, Kentucky, for Appellant. John Patrick Grant, Charles P. Wisdom, Jr., ASSISTANT UNITED

STATES ATTORNEYS, Lexington, Kentucky, Stephen C. Smith, ASSISTANT UNITED STATES ATTORNEY, London, Kentucky, for Appellee.

---

**OPINION**

---

BOYCE F. MARTIN, JR., Chief Judge. Pursuant to his plea bargain, Robert Haddix is currently serving five years imprisonment for two federal marijuana offenses. The District Court imposed this sentence after denying Haddix's motion to suppress most of the evidence against him, rejecting his contention that a warrantless raid of his home violated the Fourth Amendment. His appeal of the suppression motion is now before us. For the reasons stated herein, we REVERSE and REMAND for resentencing in accordance with this opinion.

**I.**

On September 17, 1998, the United States Forest Service and the Kentucky State Police were conducting marijuana location and eradication strikes in the southeastern part of the state. From a police helicopter, a "spotter" identified marijuana growing behind a house subsequently learned to be the residence of Robert Haddix. The police did not attempt to obtain a search warrant before investigating. Approaching the home, officers on the ground heard the sounds of electric motors emanating from the building and saw electric lines leading to outbuildings. They also saw sixty-seven marijuana plants.[1] Two officers knocked on the back porch storm door

---

[1] Despite the District Court's express finding that these plants were located within Haddix's curtilage, Haddix's plea agreement preserved only the right to appeal the admission of evidence seized from inside the residence itself. This opinion does not dishonor the important rule that the full extent of a home's Fourth Amendment protection extends to the boundary between its curtilage and any surrounding "open fields." *See United States v. Oliver*, 686 F.2d 356, 360 (6th Cir. 1982).

searched." *Nix*, 467 U.S. at 435-36. Likewise, *Dice* recognized that a successful inevitable discovery argument "requires the government to proffer clear evidence 'of an independent, untainted investigation that inevitably would have uncovered the same evidence' as that discovered through the illegal search." *Dice*, 200 F.3d at 986 (quoting *United States v. Leake*, 95 F.3d 409, 412 (6th Cir. 1996)). The record of the instant case includes no indication that the police were investigating Haddix independently of the chance fly-over giving rise to his arrest. Thus, the inevitable discovery argument proffered by the United States must fail for this reason as well.

**III.**

Without a warrant and without any exception to the standard warrant requirement justifying the actions of the police at issue here, the evidence found before Haddix's arrest is all "fruit of a poisonous tree," "'come at by the exploitation of that illegality [rather than] by means sufficiently distinguishable to be purged of the primary taint.'" *Leake*, 95 F.3d at 412 (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)). The District Court's decision to the contrary was in error, and we hereby remand for the resentencing of Haddix based only on the terms of his plea agreement as it now stands.

would inevitably have been discovered lawfully." WAYNE R. LAFAVE, SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 11.4(a), at 241 (3d ed. 1996); *see United States v. Dice*, 200 F.3d 978, 986 (6th Cir. 2000); *United States v. Kennedy*, 61 F.3d 494, 499-500 (6th Cir. 1995); *United States v. Johnson*, 22 F.3d 674, 684 (6th Cir. 1994); *United States v. Buchanan*, 904 F.2d 349, 356-57 (6th Cir. 1990).

In the case at bar, the United States urges us to interpret the inevitable discovery doctrine to admit evidence when the police could have obtained a warrant but did not do so – that is, whenever probable cause would have existed had a magistrate considered the question in advance of the search, regardless of whether a magistrate in fact did. Under such a theory, evidence that would constitute probable cause for a warrant, even when that evidence's existence is unknown to the police, is inherently destined to be "inevitably discovered." Let it be absolutely clear: this is untenable. As we have noted before, this position of the United States would "'completely obviate the warrant requirement'" and would constitute, to say the least, a "radical departure from the Fourth Amendment warrant requirement precedent." *Johnson*, 22 F.3d at 683-84 (quoting in part *United States v. Echegoyen*, 799 F.2d 1271, 1280 n.7 (9th Cir. 1986)). Today, we again hold that the warrant requirement is at the very heart of the Fourth Amendment, and that judicial exceptions to it are only exceptions.

We most recently discussed inevitable discovery in *Dice*, and that decision applied the logic of *Nix v. Williams*, 467 U.S. 431 (1984). In *Nix*, a police violation of the defendant's Sixth Amendment rights led him to confess the location of the body of a child he had murdered, although a large search party had by that time begun looking in the general area where the victim was located. The *Nix* Court emphasized that "two hundred volunteers . . . were instructed to check all roads, abandoned farm buildings, ditches, culverts, and any other place in which the body of a small child could be hidden" and that the body was found "essentially within the area to be

but no one responded. Through the door, the police noticed a semi-automatic assault rifle and, still without a warrant, entered the porch to seize the firearm. The police continued inside the house, where they found Haddix asleep atop two more guns and more marijuana. Haddix was arrested immediately. The police finally obtained a warrant at this point, thoroughly searched the premises, and discovered significant quantities of drugs, elaborate growing and processing systems, security mechanisms, and additional weapons.

On October 22, Haddix was indicted on two counts of possessing with intent to distribute and distributing a Schedule 1 controlled substance and one count of using and carrying a firearm during and in relation to a drug trafficking crime. On November 30, he filed a motion to suppress "all evidence seized from his home and outbuildings" on the day of the Government's raid. After a hearing on December 4, the District Court on January 7, 1999, adopted the Magistrate Judge's recommendation that the motion be denied. The weapons charge was dismissed on August 23 and, on the same date, the District Court accepted Haddix's guilty plea to the remaining counts and sentenced him.

## II.

The Fourth Amendment ensures, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. am. IV. As a practical matter, this provision normally requires the police to have a warrant whenever their conduct compromises an individual's privacy in his or her personal affairs. When the police do so without a warrant, however, a given search or seizure might still be "reasonable" under a recognized exception to the warrant requirement.[2] If the police have no

---

[2] A commentator recently summarized the leading exceptions as "investigatory detentions, warrantless arrests, searches incident to a valid arrest, seizure of items in plain view, exigent circumstances, consent

warrant and no exceptions apply, then no evidence discovered in that search or seizure may be admitted against anyone with standing to raise the Fourth Amendment as a defense.

As we have stated, the police in this case failed to obtain a warrant until well after they invaded Haddix's home. Nevertheless, the United States persuaded the District Court that the police faced exigent circumstances and, in the alternative, that the police would have "inevitably discovered" the evidence Haddix challenges. We review these conclusions *de novo*. *See United States v. Ford*, 184 F.3d 566, 577 (6th Cir. 1999); *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1512 (6th Cir. 1988).

**A.**

In the Sixth Circuit, *United States v. Morgan*, 743 F.2d 1158 (6th Cir. 1984), controls any consideration of the exigent circumstances doctrine, and we reaffirm that decision today. Most importantly, *Morgan* specifically enumerates three situations that "justify[] abandonment of the warrant procedure" under the exigent circumstances rubric: hot pursuit of a fleeing suspect; where a suspect represents an immediate threat to the arresting officers or the public; or where immediate police action is needed to prevent the destruction of vital evidence or to thwart the escape of known criminals. *Morgan*, 743 F.2d at 1162-63. Moreover, *Morgan* instructs that "[p]olice officials . . . are not free to create exigent circumstances to justify their warrantless intrusions." *Id.* at 1163. As a result, no degree of noise or chaos stemming only from a police presence can legitimize otherwise unlawful police conduct.

---

searches, vehicle searches, container searches, inventory searches, border searches, searches at sea, administrative searches, and searches in which the special needs of law enforcement make the probable cause and warrant requirements impracticable." Douglas K. Yatter et al., *Warrantless Searches & Seizures*, 88 GEO. L.J. 912, 912 (2000). We take special care to administer them in a "narrow and well-defined" manner. *See Dow Chemical Co. v. United States*, 749 F.2d 307, 310 (6th Cir. 1984).

On the instant facts, no legal exigency excused the police's entry into Haddix's home. The police could not have been in hot pursuit because they did not know if any individual was even present at the scene before Haddix's arrest; therefore, it was impossible to ascertain whether anyone was fleeing. Similarly, the police could not have perceived a serious threat to their safety; although they saw a gun on the porch, they concede that the weapon was not attended by a person who could have used it. And even if the police assumed that drugs were being destroyed inside the house based on what they saw outside it, we have previously recognized that such a belief does not alone make a search permissible. "Notwithstanding the ease in which narcotics can be destroyed, a warrantless entry into the home of a suspected drug trafficker, effected without an objectively reasonable basis for concluding that the destruction of evidence is imminent, does not pass constitutional muster." *United States v. Radka*, 904 F.2d 357, 361 (6th Cir. 1990).

Relatedly, the United States argues that what the police legally saw during the fly-over justifies an illegal intrusion because those observations would have supported probable cause if a warrant had been sought. But we additionally stated in *Morgan* that "[t]his [belief] . . . cannot excuse the failure to secure a warrant. Police officers may not, in their zeal to arrest an individual, ignore the Fourth Amendment's warrant requirement merely because it is inconvenient." *Morgan*, 743 F.2d at 1162-63. In this vein, it is appropriate to stress that the Fourth Amendment requires not merely a police assessment of probable cause, but the agreement of a "neutral and detached magistrate." *See Johnson v. United States*, 333 U.S. 10, 13-14 (1948). As the United States reads the law, this second, critical element of proper warrants is ignored.

**B.**

This Circuit acknowledges that the exclusionary rule does not apply when the Government can demonstrate that "evidence found because of a Fourth Amendment violation