**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Timothy WATSON, Defendant–Appellant.**

**No. 01–5969.**

United States Court of Appeals, Sixth Circuit.

May 15, 2003.

Before BATCHELDER and MOORE, Circuit Judges; and FORESTER,* District Judge.

---

* The Honorable Karl S. Forester, Chief Judge, United States District Court for the Eastern District of Kentucky, sitting by designation.

BATCHELDER, Circuit Judge.

Timothy Watson appeals the district court's order denying his motion to suppress evidence obtained by police officers who searched his apartment without knocking and announcing their presence before entering. Because we conclude that the officers executing the search warrant were not confronted by exigent circumstances sufficient to justify their entering the apartment without knocking and announcing, and because the warrant upon which they were proceeding was not a "no-knock" warrant and they had no basis for relying upon the good faith exception announced in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), we remand with instructions for the district court to vacate Watson's guilty plea and grant his motion to suppress.

I

On February 8, 2000, Officer Jim Joyner of the Dyersburg Police Department filed an affidavit and request for a warrant to search the apartment of Defendant–Appellant Timothy Watson, whom Officer Joyner suspected of selling drugs. The investigation of Watson for narcotics trafficking began when one Henry Island came to the Dyersburg police station and volunteered that he was mad at Watson because Watson owed him money, that he had witnessed Watson selling drugs, and that he would be willing to wear a microphone and make a controlled buy of cocaine from Watson.[1]

Officer Joyner searched Island and, finding no drugs on his person, placed a microphone and transmitter on him and gave him $100 to make a cocaine purchase from Watson. Joyner sent Island off in a car driven by Island's companion, Cecil Crandall, with instructions to go to Watson's apartment and make the controlled buy. Neither Joyner nor any other officer searched Crandall or the passenger area of the car, although an officer did search the car's trunk. Officer Joyner followed Crandall and Island in a separate car and, in order to avoid suspicion, parked around the corner from Watson's apartment building. Joyner therefore could not see Island enter or leave the building, and he could monitor the transaction only to the extent that he could hear whatever Island's hidden microphone transmitted successfully. Island apparently entered Watson's apartment, and Officer Joyner heard him speaking with other persons.[2] Island then returned to the police station where he met Officer Joyner and turned over five pieces of crack cocaine that he said he had purchased from Watson. He also told Officer Joyner that Watson "was in the possession of a sawed-off shotgun." although there is no indication in the record that Island actually saw such a weapon or specified where in the apartment Watson kept it.[3]

Officer Joyner filed a request for a "no-knock entry" search warrant supported by

---

1. Island, though willing to aid in the cause of law enforcement in this instance, was not exactly a choir boy. In fact, he had been convicted not only of the sale of a Schedule IV controlled substance, but also of grand larceny, petit larceny, auto theft, and forgery (twice).

2. The verbal exchange among Watson and the other individuals does not indicate whether a drug transaction actually took place.

3. At the suppression hearing, the following exchange took place between the government's attorney and Officer Joyner:

Attorney: Did Mr. Island indicate anything to you about the presence of firearms at Mr. Watson's residence?

Joyner: Yes, he did. He told me that Mr. Watson was in the possession of a sawed-off shotgun.

J.A. 108.

an affidavit which explained briefly that a "controlled buy" had taken place and noted the suspected presence of a sawed-off shotgun.[4] Joyner verbally informed the issuing judge that he believed that Island had a criminal record. In fact, although Joyner had not done a background search on Island, he knew that Island had a criminal record, and, because he had not used Island before as an informant, he did not place a great deal of trust in him. Officer Joyner was more familiar with Watson: several years earlier, during the execution of a search warrant, Joyner and other officers had discovered Watson with crack cocaine and a firearm. Joyner also knew about earlier incidents in which Watson's girlfriend had reportedly pulled a gun on another woman before fleeing with Watson in a car and, as the police attempted to stop them, someone threw drugs and a gun out of the car window; a burglary in which Watson and an accomplice robbed at gunpoint the occupants of a residence; and several other illegal activities in which Watson had participated as a juvenile. The record does not reflect, however, that Joyner advised the issuing judge of Watson's history.

When executing the search warrant, the police did not knock on the door or announce their presence before entering Watson's residence. Though the officers recovered neither a shotgun nor crack, they found numerous other items indicative of drug trafficking, including a digital scale, a saucer with cocaine residue, over $8,000 cash and a .357 Magnum handgun.

Watson was indicted on charges of possession with intent to distribute 0.4 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1), and with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He filed a motion to suppress the evidence obtained during the search, claiming that Officer Joyner had presented the facts in his affidavit in a misleading manner in order to secure the search warrant, and that the officers had failed to knock and announce themselves when executing the search warrant. The district court, after holding a suppression hearing, denied the motion, finding that Officer Joyner did not make any misleading statements in obtaining the warrant, that the cocaine purchase made by Island was adequately monitored for the purposes of calling it a "controlled buy" in the affidavit supporting the search warrant, and that the no-knock entry was justified under *United States v. Bates*, 84 F.3d 790 (6th Cir.1996). Watson then entered into a plea agreement with the government pursuant to which the government dropped the cocaine charge and Watson pled guilty to the firearm possession charge, while reserving the right to appeal the denial of his motion to suppress.[5] Watson was sentenced to 188 months in

---

4. In pertinent part, the affidavit stated:
   Island was sent to the residence by affiant and did purchase $100 worth of crack cocaine. The transaction was monitored and recorded by Affiant, and the substance field tested positive for cocaine base. Due to the fact that Island has seen several sales of cocaine conducted by Watson from the residence, Island knows that Watson stores cocaine in the residence for resale.... Island further states that Watson is in possession of a sawed-off shotgun therefore a "No Knock" entry is requested.

J.A. 23.

5. Watson also filed an objection to his presentence report, contesting his classification as an Armed Career Criminal under the Sentencing Guidelines. The district court agreed with part of the defendant's objections to the presentence report, but held that Watson should be classified as an Armed Career Criminal even taking those objections into account.

prison followed by 4 years of supervised release. He filed this timely appeal.

On appeal, Watson claims that the district court erred in failing to suppress the evidence under the rationale of *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and that the officers' failure to knock and announce before entering Watson's residence renders the fruits of their search inadmissible. He also alleges error based upon the district court's finding that he qualified as an Armed Career Criminal under the Sentencing Guidelines.

## II

■ We begin by addressing whether the evidence seized by Officer Joyner and the other officers who searched Watson's apartment must be excluded because the officers did not comply with the "knock-and-announce" requirement set forth in *Wilson v. Arkansas*, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), *Richards v. Wisconsin*, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), and similar cases. We review de novo a district court's legal conclusions with respect to a motion to suppress, but disturb its "factual findings on the existence of exigent circumstances ... only if they are clearly erroneous." *Bates*, 84 F.3d at 794 (internal quotations omitted) (citing *United States v. Radka*, 904 F.2d 357, 361 (6th Cir.1990)). We review the evidence in the light most favorable to the government. *United States v. Harris*, 255 F.3d 288, 292 (6th Cir.), *cert. denied sub nom. Taylor v. United States*, 534 U.S. 966, 122 S.Ct. 378, 151 L.Ed.2d 288 (2001).

The Supreme Court has held that in general, the reasonableness requirement of the Fourth Amendment constrains police officers to knock and announce their presence and intentions before executing a search of a residence. *See Wilson*, 514

U.S. at 931–34. Nonetheless, "the knock-and-announce requirement [can] give way 'under circumstances presenting a threat of physical violence,' or 'where police officers have reason to believe that evidence would likely be destroyed if advance notice were given.'" *Richards*, 520 U.S. at 391 (quoting *Wilson*, 514 U.S. at 936). Allowing a "no-knock" entry when the "police ... have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by ... allowing the destruction of evidence," serves to "strike[ ] the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries." *Id.* at 394.

We have determined that exigent circumstances which could justify a no-knock entry are present when

> (1) the persons within already know of the officers' authority and purpose; (2) the officers have a justified belief that someone within is in imminent peril of bodily harm; or (3) the officers have a justified belief that those within are aware of their presence and are engaged in escape or the destruction of evidence.

*Bates*, 84 F.3d at 795 (internal quotations omitted). "The government has the burden of proving that exigent circumstances existed," and we "will closely scrutinize officers making a forced entry without first adequately announcing their presence and purpose." *Id.* at 794–95.

None of the three factors announced in *Bates* is present here. There is no evidence that Watson knew of the officers' presence and purpose before they knocked down his door or that anyone within was in immediate peril of bodily harm. And

though Watson was suspected of dealing in amounts of crack cocaine that were easily disposable, the police had no evidence before they made their presence known that Watson was aware of their presence and was engaged in escape or the destruction of evidence. *See Richards,* 520 U.S. at 395 (holding that police officers could execute a no-knock search when the suspected drug dealer cracked his door, realized that the police were without, and quickly slammed the door shut to prevent their entry); *see also United States v. Elkins,* 300 F.3d 638, 656–57 (6th Cir.2002) (allowing a no-knock entry when the officers knew that there were drugs on the premises *and* when the inhabitants of the residence knew of the officers' presence and would likely try to destroy evidence as a result). As we stated in *United States v. Haddix,* 239 F.3d 766 (6th Cir.2001), " '[n]otwithstanding the ease in which narcotics can be destroyed, a warrantless entry into the home of a suspected drug trafficker, effected without an objectively reasonable basis for concluding that the destruction of evidence is imminent, does not pass constitutional muster.' " *Id.* at 768 (quoting *Radka,* 904 F.2d at 361). The same is true of a no-knock entry.

■ We must still consider, however, whether the officers had "a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would [have been] dangerous...." *Richards,* 520 U.S. at 394. In *Bates,* we stated that "[t]he presence of a weapon creates an exigent circumstance, provided the government is able to prove they possessed information that the suspect was armed and likely to use a weapon or become violent." 84 F.3d at 795. While evidence that firearms are within a residence is, by itself, insufficient to show an exigent circumstance, such evidence may be sufficient if combined with "a crim-

inal record reflecting violent tendencies, or a verified reputation of a suspect's violent nature...." *Id.*

The district court found that the suspected presence of a firearm (based upon information from Island), combined with Officer Joyner's knowledge of Watson's criminal past and the ease with which the evidence could be destroyed, rendered the no-knock entry permissible. We do not think, under the circumstances, that Officer Joyner could reasonably rely on the information he possessed regarding the presence of a shotgun for the purposes of executing a no-knock warrant. We reach this conclusion for several reasons.

First, the information from Island was unverified and highly unreliable. Joyner acknowledges that he had never dealt with Island before, but knew that Island had a criminal record. Island, who was personally well acquainted with the criminal justice system, came to Officer Joyner offering his assistance because he was angry at Watson over money that Watson allegedly owed him. While we do not suggest that Joyner should have entirely discounted Island's information, *see United States v. Czuprynski,* 46 F.3d 560, 564–65 (6th Cir. 1995) (en banc) (noting that "[t]o require a police officer to discount such information [from an individual with a personal motive of revenge] would result in the rejection of a good deal of evidence relied upon daily by courts and juries"), we think that in light of his knowledge of Island's motivation and criminal record, Joyner had a particularly strong duty under the "totality of the circumstances" to corroborate independently the veracity of Island's statements. *Illinois v. Gates,* 462 U.S. 213, 241–42, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (emphasizing "the value of corroboration of details of an informant's tip by independent police work."). Though Officer Joyner did attempt to verify the pres-

ence of drugs at Watson's apartment,[6] he made no attempt to verify Island's vague and conclusory statement that "Watson is in possession of a sawed-off shotgun."

Moreover, Island's statement regarding the presence of a shotgun lacks the necessary specificity to support a finding that the officers would be in danger sufficient to justify a no-knock entry. There is an appreciable difference between, for instance, Watson's having a shotgun that he kept in a back closet, and his having a shotgun that he kept next to an open store of drugs or at the end of a living room couch. *See, e.g., United States v. Williams,* No. 98-3526, 1999 U.S.App. LEXIS 27409, at *13, 1999 WL 993997 (6th Cir. Oct. 22, 1999) (allowing a no-knock entry when the confidential informant alerted the police that the drug-dealing suspect had a handgun ready whenever he answered the door). Island did not provide–and apparently Joyner did not ask for–information about whether the shotgun was readily available to Watson in the apartment.

Because Officer Joyner did not have reliable information that Watson had a shotgun in the apartment, we need not examine whether Watson had violent tendencies in order to hold that the officers did not have reasonable suspicion that knocking and announcing their presence would be dangerous, futile or destructive of the purpose of their search.

### III

■ The government argues that, regardless of the presence or lack of exigent circumstances, the exclusionary rule does not apply to the evidence obtained in the search of Watson's residence because the officers relied in good faith on a no-knock warrant that was validly issued by an impartial magistrate. In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Court held that even when a search warrant is determined to be defective after it has been executed, so long as the police officer "acted in good faith in conducting the search," and had "reasonable grounds for believing that the warrant was properly issued," the evidence obtained from the search will not be excluded. 468 U.S. at 922–23 (internal quotations omitted).

It is the judicial officer's responsibility to determine whether probable cause exists to issue a warrant, and, in the ordinary case, police officers cannot be expected to question that determination. Because the officer's sole responsibility after obtaining a warrant is to carry out the search pursuant to it, applying the exclusionary rule in these circumstances could have no deterrent effect on a future Fourth Amendment violation by the officer.

*Illinois v. Krull,* 480 U.S. 340, 349, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987).

The key to determining in any particular case whether the evidence seized pursuant to an invalid warrant must be suppressed is whether the "officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues [was] objectively reasonable." *Leon,* 468 U.S. at 922. The Court went on to say, "it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued," and in those

---

**6.** Though we need not rule today on the sufficiency of the "controlled" buy Island made, we note that the failure to search all of Crandall's car and the fact that the officers monitoring the transaction could not see the building in which Watson's apartment was located and therefore did not have firsthand knowledge that Island even entered that building, cast significant doubt on the alleged source of the cocaine Island supposedly purchased.

circumstances suppression of the evidence is an appropriate remedy. *Id.* at 922–23. The Court explicitly held that an officer would not "manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* at 923 (citations omitted).

■ Whether the warrant in this case is, as both the government and Watson believe, a "no-knock" warrant is questionable. It is true that the affidavit submitted by Officer Joyner specifically requests a "No–Knock entry." However, the warrant itself merely authorizes Officer Joyner to search the "person and premises" of the property described in the warrant; it neither makes reference to the affidavit nor grants Joyner permission to enter the apartment without knocking and announcing. Tennessee law is clear on the relationship between the affidavit supporting the search warrant and the warrant itself:

> Despite the fact that an affidavit is integral to the issuance of a search warrant, in Tennessee, it is not considered an actual part of the warrant, even if it appears on the same printed form as the warrant.... A search warrant may, however, be construed with a supporting affidavit if the affidavit accompanies the warrant and the warrant expressly incorporates the affidavit by reference.

*State v. Lowe,* 949 S.W.2d 300, 303 (Tenn. Crim.App.1996). We think that under Tennessee law, this is not a "no-knock" warrant. But even if Officer Joyner believed it was, that fact does not end our inquiry.

In *Richards,* the Court noted in a footnote that several states give magistrates the authority to issue "no-knock" warrants "if the officers demonstrate ahead of time a reasonable suspicion that entry without prior announcement will be appropriate in a particular context." 520 U.S. at 396 n. 7. The Court viewed this practice as "entirely reasonable when sufficient cause to do so can be demonstrated ahead of time." *Id.* In *United States v. Johnson,* 267 F.3d 498 (6th Cir.2001), reviewing a search conducted pursuant to a "no-knock" warrant,[7] this circuit held that the fact the warrant authorizing the search also authorizes an entry without knocking does not end the inquiry because "[t]he Supreme Court has specifically held that whether officers announce themselves before a search constitutes a factor in the reasonableness inquiry required by the Fourth Amendment," *id.* at 500, and the court is required to determine "whether the allegations contained in the warrant application were sufficient to support a conclusion that exigent circumstances justified the issuance of no-knock authority." *Id.*

Whether the affidavit in this case contains sufficient indicia of probable cause as to justify the issuance of the search warrant is questionable at best, given the unreliability of the informant and the lack of corroboration of the informant's evidence. But it is certainly clear that when Officer Joyner sought the warrant he neither had nor presented in the affidavit the kind of information that would have justified "a reasonable suspicion that knocking and announcing their presence, *under the particular circumstances,* would be dangerous or futile, or that it would inhibit the effective investigation of the crime...." *Rich-*

---

**7.** Although we held in *Johnson* that the defendant had forfeited his claim that the warrant did not authorize a "no-knock" entry, we noted that the defendant was clearly incorrect in that claim because, unlike the warrant in the case before us, the warrant explicitly incorporated by reference the affidavit's request to enter the premises without knocking. *Johnson,* 267 F.3d at 500.

*ards,* 520 U.S. at 394 (emphasis added). At best, Joyner had the word of an informant whom Joyner himself did not view as reliable that there were drugs in the apartment and that Watson "was in possession" of a weapon whose location was not disclosed. As we observed in *Johnson,* "[h]ad the affidavit merely contained generalized allegations of drug dealing within the residence, the government would not have demonstrated the kind of exigency required to justify a no-knock warrant." *Id.* at 501. Similarly, we think that the generic statement that Watson was in possession of a weapon is insufficient to describe the kind of exigency demanded by *Richards* and *Bates,* i.e., that the officers have reason to believe "that knocking and announcing their presence ... would be dangerous," *Richards,* 520 U.S. at 394, because "the suspect [is]armed and likely to use a weapon or become violent." *Bates,* 84 F.3d at 795.

■ Finally, we conclude that Officer Joyner did not "manifest an objective good faith," *Leon,* 468 U.S. at 923, in relying on the warrant. After *Wilson* in 1995 and *Richards* in 1997, every reasonably well-trained officer should have known that more is required to excuse the knock-and-announce requirement than the conclusory and wholly unspecific statements Officer Joyner presented in the affidavit supporting his request for the warrant. Indeed, by the year 2000, when this warrant was executed, we could expect that officers in this circuit should have been aware of the *Bates* requirements detailed hereinabove.

For the foregoing reasons, we hold that the "no-knock" entry into Watson's apartment was not justified, and the evidence seized during the ensuing search must be suppressed. It is therefore not necessary for us to address Watson's claim that the district court erred in finding that the search warrant was not invalid under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), or Watson's claim of sentencing error.

## IV

Accordingly, we VACATE Timothy Watson's guilty plea and sentence, and remand this matter to the district court with instructions to grant the motion to suppress.