RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0350p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SHAWN QUINNEY,

*Defendant-Appellant.*

No. 07-4055

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 05-00807—David A. Katz, District Judge.

Argued: July 31, 2009

Decided and Filed: October 1, 2009

Before: GILMAN, COOK, and FARRIS, Circuit Judges.[*]

_____

## COUNSEL

**ARGUED:** Jeffrey Paul Nunnari, LAW OFFICE, Toledo, Ohio, for Appellant. David O. Bauer, ASSISTANT UNITED STATES ATTORNEY, Toledo, Ohio, for Appellee. **ON BRIEF:** Jeffrey Paul Nunnari, LAW OFFICE, Toledo, Ohio, for Appellant. David O. Bauer, ASSISTANT UNITED STATES ATTORNEY, Toledo, Ohio, for Appellee.

GILMAN, J., delivered the opinion of the court, in which COOK, J., joined. FARRIS, J. (p. 7), delivered a separate concurring opinion.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge. Shawn Quinney appeals the district court's denial of his motion to suppress the key evidence used against him. Quinney was

---

[*] The Honorable Jerome Farris, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

indicted on two counts of manufacturing and passing counterfeit currency. He pled guilty to both counts, but preserved his right to contest the district court's decision denying Quinney's motion to suppress a printer and two statements that he made to law enforcement authorities. For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

## I.  BACKGROUND

Quinney was under investigation by special agents from the United States Secret Service for manufacturing and passing counterfeit currency. Two agents visited Quinney's home and obtained his consent to look in his bedroom, where they observed a printer. Quinney, who was then 19 years old, admitted to the agents that he had passed bogus bills, but denied printing them.

Later that afternoon, after receiving information from two witnesses that Quinney had in fact printed the counterfeit bills, the agents returned to his residence. During the second visit, the agents seized the printer without obtaining either consent or a search warrant. Quinney was not home at the time, and his stepfather, with whom he lived, testified that the agents simply announced that they were seizing the printer without seeking even the stepfather's permission.

The agents then located Quinney and interviewed him in their car. He was not placed under arrest or warned of his *Miranda* rights at that time. The agents informed him that they had seized his printer and were sending it to forensics for examination. In addition, they told him that two witnesses had implicated him as the manufacturer of counterfeit bills. At some point during this second interview, Quinney gave the agents a written confession of guilt. He was interviewed a third time a week later at the agents' office and wrote a one-page supplement to his earlier confession. The parties dispute whether the agents advised Quinney of his *Miranda* rights during this third interview.

Quinney was charged with manufacturing counterfeit currency, in violation of 18 U.S.C. § 471, and uttering counterfeit currency, in violation of 18 U.S.C. § 472. He

moved to suppress evidence of the printer and the statements he made during his second and third interviews with the agents. The motion was denied by the district court. Quinney then pled guilty to both counts, but preserved his right to appeal the denial of the motion to suppress. He was sentenced to five months of imprisonment and three years of supervised release.

On his prior appeal, this court concluded that the district court had applied an incorrect standard of review in analyzing the motion to suppress. The district court's decision was therefore vacated and the case remanded for further consideration. Using the proper standard of review, the district court again denied the motion to suppress, concluding that the printer was admissible under the inevitable-discovery doctrine. The court also concluded that both Quinney's original written confession and its one-page supplement were properly admissible. Quinney now appeals once again.

## II. ANALYSIS

### A.       Standard of review

Where the issue on appeal is the denial of a motion to suppress, we review the district court's findings of fact under the clear-error standard and its conclusions of law de novo. *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000).

### B.       Seizure of the printer

Quinney challenges the seizure of his printer and the admissibility of the subsequent statements he made to the government, alleging that the district court misapplied the inevitable-discovery doctrine. Under this doctrine, "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . [,] then the deterrence rationale has so little basis that the evidence should be received." *United States v. Alexander*, 540 F.3d 494, 502 (6th Cir. 2008) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). This court in *Alexander* addressed a situation where law enforcement authorities had arrested the defendant in his home while serving a search warrant. Under questioning from the authorities, Alexander revealed where he had hidden a package of

drugs, but did so before he received his *Miranda* warnings. Alexander later moved to suppress the drugs on the basis that their production was tainted by his inadmissible statement, but this motion was denied under the inevitable-discovery doctrine because the authorities had a valid search warrant and would have discovered the drugs anyway while searching the house. *Id.* at 499, 502.

In the present case, the government argues that the inevitable-discovery doctrine applies because the agents had probable cause to obtain a search warrant at the time the printer was seized. The government repeatedly cites *United States v. Kennedy*, 61 F.3d 494 (6th Cir. 1995), in support of its argument, but we find that case easily distinguishable. *Kennedy*, like *Alexander*, in fact provides a good example of the type of case that the inevitable-discovery doctrine is meant to address. In *Kennedy*, the government conducted a warrantless search of a mislabeled suitcase, left unclaimed at an airport, that was found to contain cocaine. The *Kennedy* court concluded that the cocaine would have been inevitably discovered because, if the government had not performed the illegal search, the suitcase would have been opened by airline personnel in an effort to locate the owner. *Id.* at 500. Although the *Kennedy* court did not discuss the outer boundaries of the inevitable-discovery doctrine, the case most certainly does not apply to the facts presently before us.

The case that *does* apply to the facts before us is this court's decision in *United States v. Haddix*, 239 F.3d 766 (6th Cir. 2001). In *Haddix*, the police conducted a warrantless search of the defendant's residence after a police helicopter spotted marijuana plants growing behind the dwelling, and after police on the ground saw electric lines leading to out-buildings, the previously spotted marijuana plants, and a semi-automatic assault rifle on the premises, all before entering the residence. *Id.* at 766-67. This court in *Haddix* held that the warrantless search and seizure of the evidence was unlawful and that the evidence must be suppressed. *Id.* at 768-69. Analogous to the situation in *Haddix*, the agents in the present case had probable cause, based on the statements of two witnesses, to obtain a search warrant for the seizure of the printer. But instead of actually obtaining a warrant, they seized the printer without

one.  As the court said in *Haddix*, "[l]et it be absolutely clear:  this is untenable" because the "position of the United States would completely obviate the warrant requirement." *Id.* at 768 (internal quotation marks omitted).

Supporting this conclusion is a line of cases that demonstrates this circuit's commitment to the Fourth Amendment's warrant requirement, and that rejects the government's attempt to circumvent the requirement via the inevitable-discovery doctrine.  *See, e.g.*, *United States v. Johnson*, 22 F.3d 674, 683 (6th Cir. 1994) (rejecting the logic that "simply because the police could have obtained a warrant, it was therefore inevitable that they would have done so," noting that such a ruling "would mean that there is inevitable discovery and no warrant requirement whenever there is probable cause"); *United States v. Buchanan*, 904 F.2d 349, 356-57 (6th Cir. 1990) (rejecting the government's contention that a warrantless search was permissible because agents had collected information that would have supported a search warrant); *United States v. Griffin*, 502 F.2d 959, 961 (6th Cir. 1974) ("The assertion by police (after an illegal entry and after finding evidence of crime) that the discovery was 'inevitable' because they planned to get a search warrant and had sent an officer on such a mission, would as a practical matter be beyond judicial review."); *United States v. Bowden*, 240 F. App'x 56, 63 (6th Cir. 2007) ("Doubtless, the inevitable-discovery doctrine does not permit police, who have probable cause to believe a home contains contraband, to enter a home illegally, conduct a warrantless search and escape the exclusionary rule on the ground that the 'police *could* have obtained a warrant yet chose not to do so.'") (emphasis in original, internal brackets and citations omitted).  Given that *Haddix* and the other cases cited above emphatically reject the government's reliance on the inevitable-discovery doctrine under the circumstances presented here, we conclude that the district court erred in not granting Quinney's motion to suppress evidence of the printer.

**C.     Quinney's post-seizure statements**

We now turn to the remainder of Quinney's motion to suppress. The record below reveals that the district court evaluated the potential admissibility of Quinney's second and third statements to the agents based on the mistaken belief that the printer was properly admissible in evidence.  Accordingly, we are remanding this case with instructions for the district court to conduct a hearing to reevaluate whether these post-seizure statements should also be suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

### III.  CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

––––––––––––––––––––––

**CONCURRENCE**

––––––––––––––––––––––

JEROME FARRIS, Circuit Judge, concurring.    The trial court properly recognized this as not a typical suppression situation.  As the majority points out, the inevitable discovery doctrine typically applies to bar suppression of evidence that, if not for the tainted investigation, would inevitably have been "discovered" or "uncovered." *See United States v. Alexander*, 540 F.3d 494, 502 (6th Cir. 2008) (quoted by the majority opinion, *supra*); *United States v. Leake*, 95 F.3d 409, 412 (6th Cir. 1996).

In this case, the police were on premises with consent of the accused when they "discovered" or "uncovered" the printer.  The police did not seize the printer at that time as the accused had admitted passing counterfeit notes, but denied other involvement. Two later interviewed witnesses (one of whom was Quinney's brother) identified Quinney as the counterfeiter.  The police thereafter returned to seize the printer and did so, even though they had neither a warrant nor consent to search.   One can speculate about why the police failed to obtain a warrant before making the seizure, but nothing in the record justifies this failure.

I therefore join the majority.