TERRENCE G. BERG, UNITED STATES DISTRICT JUDGE
I. Introduction
Defendant Robert Gordon moves to suppress evidence derived from an illegal search as "fruit of the poisonous tree."
In a previous order, this Court suppressed evidence seized on August 27, 2017, when officers from the Southfield Police Department ("SPD") entered Defendant's hotel room without a search warrant while responding to a report that a 16-year-old girl ("MV1 [Minor Victim -1]") was inside the room with Defendant, a 45-year-old man unknown to her parents. The officers knocked on the door several times, but no one answered. Using a key provided to them by the hotel's front desk clerk, the officers entered the room. They found the Defendant and MV-1 inside and seized electronic devices belonging to Defendant. Defendant moved to suppress the evidence found on those devices, and the motion was *1003 granted by this Court. See Opinion and Order Granting Defendant's Motion to Suppress, Dkt. 20.
But that was not all of the evidence in this case. Also seized at the time of the illegal entry into the hotel room was the cell phone belonging to MV-1. Further, in the days following the hotel room search, police came into possession of a second cell phone that MV-1 had previously used, as well as additional evidence seized during a subsequent search of defendant's home and vehicle. Defendant moves now to suppress both of MV-1's cell phones, as well as all evidence seized from his home.
For the reasons outlined below, Defendant's motion is GRANTED IN PART and DENIED IN PART .
II. Background
At around 3:00 a.m. in the morning on August 27, 2016, parents of 16-year-old "MV-1" called 911 to inform officers that they received information their daughter was at the Marvin's Garden Inn in Southfield, Michigan. ("Marvin's Garden" or "the hotel"). Although MV-1 told her parents that she would be spending the night at a friend's house, she was actually at the hotel with a 45-to-50 year old man from Indiana named "Robert." Dkt. 14, Pg. ID 32.[1] MV-1's parents had never heard of "Robert" and did not know who he was. According to the government, Marvin's Garden Inn is a hotel "well-known to the officers for sex trafficking, drugs, and violence." Dkt. 17, Pg. ID 62.
Four Southfield Police Officers met MV-1's parents in the hotel parking lot. Dkt. 14, Pg. ID 41; Dkt. 17, Pg. ID 62, 64. Believing MV-1 was with an unknown older man from Indiana, police officers observed an orange Chevrolet HHR with an Indiana license plate parked in the hotel parking lot. After running the license plate in their database, the officers learned that the vehicle belonged to the Defendant, Robert Donald Gordon-a white, 45-year-old male from Logansport, Indiana. Dkt. 17, Pg. ID 64. Based on that information, the officers talked to the hotel clerk and learned that Gordon had checked into room # 103 earlier that afternoon.
Using their steel batons, the officers loudly struck the hotel room's steel front door and the room's glass window for "five to ten minutes" but no one answered. Dkt. 17, Pg. ID 64; see Dkt. 14, Pg. ID 41. They yelled "Southfield Police" and "Open the door," but did not hear any noise whatsoever from within the room. Transcript, Motion to Suppress Hearing, Feb. 20, 2018, Dkt. 22, Pg. ID 154-55.
Getting no answer, the officers went back to the front desk, asked for a room key, and waited for the arrival of their Sergeant. After the Sergeant arrived, they returned to the room and again used their batons to pound on the door while they announced their presence as police officers. Transcript, Motion to Suppress Hearing, Feb. 20, 2018, Dkt. 22, Pg. ID 185-86.When no one answered, they used the key to enter Defendant's room. Id. at Pg. ID 186.
Once in the room, the officers encountered Defendant sitting on the bed. Defendant informed the officers that MV-1 was *1004 in the bathroom. Dkt. 14, Pg. ID 42. The officers found and escorted MV-1 out of Defendant's hotel room. Id. ; see also Dkt. 17, Pg. ID 65. The officers did not arrest Defendant, but they did provide him with Miranda warnings. Dkt. 17, Pg. ID 65. Defendant told the officers that he wanted to "cooperate 100 percent." Id. He allegedly gave law enforcement permission to search the room and all of his belongings. Id. Law enforcement searched the room and seized a number of pieces of personal electronic property belonging to defendant, and a pink and white Samsung phone that belonged to MV-1. Dkt. 14, Pg. ID 42.[2]
The next day, MV-1's father contacted police and informed them that he found an old cell phone that belonged to MV-1 when she was 15 years old. Officers took this device and its passcode from MV-1's father, and obtained a search warrant the following day to examine its contents. Id. The affidavit for the search warrants to examine the contents of both of MV-1's phones rested solely on evidence gathered from within the hotel room. See Sealed Exh., Dkt. 31, Pg. ID 328-36.[3]
Two days later, Defendant was arrested at his place of work for alleged violations of 18 U.S.C. §§ 2251(a), 2422(b), and 2252A(a)(5)(B). See United States v. Gordon , 17-mj-30443-DUTY, Dkt. 1 (sealed). He was later charged in a seven-count indictment alleging four counts of production of child pornography, one count of coercion and enticement of a minor, one count of interstate travel with the intent to engage in a sexual act with a minor, and one count of possession of child pornography. See Dkt. 14, Pg. ID 37. After being arrested, defendant was advised of his Miranda rights, signed a waiver of those rights, and also signed a form giving police consent to search his home and vehicle. Unbeknownst to him at the time, police had already obtained a warrant to search his home. It is unknown whether the search was actually being conducted pursuant to the warrant before, or after, Defendant gave his consent. As with the affidavits regarding MV-1's cell phones, the affidavit supporting the application for a warrant to search defendant's home and vehicle rested solely on evidence obtained in the hotel search-evidence which the court later found was illegally seized.
Defendant moves to suppress derivative evidence, challenging both of MV-1's cell phones and any evidence seized during the search of Defendant's home, as "fruit of the poisonous tree"-that is, stemming from the unconstitutional search and seizure at the hotel. See id. Defendant argues that all of the evidence obtained by police should be suppressed, and also that the arrest of defendant was illegal for lack of probable cause. The government responds that not only was the evidence collected in the days after the illegal entry (MV-1's old cell phone, and the items from the home search) admissible under the independent source and inevitable discovery doctrines, but also that MV-1's cell phone collected at the hotel was not suppressed by this court's first order, because it was handed over voluntarily outside of the hotel room.
*1005 III. Standard of Review
Having already decided that the hotel room search violated defendant's Fourth Amendment rights and that evidence seized in that hotel search must be excluded, the Court now considers the question of what to do with evidence not necessarily seized during the illegal search of the hotel room, but acquired later by police.
Not everything acquired in the subsequent investigation by the police is automatically considered "fruit of the poisonous tree". Later-acquired evidence may be admissible under the independent source doctrine, the inevitable discovery doctrine, the defendant's later knowing and voluntary consent to a search of his home, or some other reason. In addition, the government contends that MV-1's cell phone seized on the night of the illegal search was located on her person and handed voluntarily to police in the parking lot of the hotel, as opposed to seized inside of the hotel room, and therefore should not be suppressed. We discuss each of these questions.
A. The Fourth Amendment
The Fourth Amendment provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no Warrants shall issue, but upon probable cause ... describing the place to be searched, and the persons or things to be seized.
U.S. Const. amend IV. The "chief evil" against which the Fourth Amendment protects is the "physical entry of the home." Payton v. New York , 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). It is a "basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton , 445 U.S. at 586, 100 S.Ct. 1371. The Fourth Amendment's full complement of protections also applies to hotel rooms. See United States v. Riley , 858 F.3d 1012, 1018 (6th Cir. 2017) (citing Hoffa v. United States , 385 U.S. 293, 301, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966) ).
This Court's prior order examined the possible exceptions to the 4th Amendment's warrant requirement and found none present in this case. Therefore, all of the evidence seized in the illegal search of the hotel room was suppressed.
B. Fruit of the Poisonous Tree
The defendant argues that all evidence obtained subsequent to the illegal search of the hotel is tainted by that illegality, and should also be suppressed. If evidence is derived[4] from information that was illegally obtained, that piece of evidence is inadmissible in court under the "fruit of the poisonous tree" doctrine. See Utah v. Strieff , --- U.S. ----, 136 S.Ct. 2056, 2061, 195 L.Ed.2d 400 (2016) (exclusionary rule encompasses both primary evidence obtained as a direct result of an illegal search or seizure and evidence later discovered and found to be derivative of an illegality) (quoting Segura v. United States , 468 U.S. 796, 804, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) (quotation marks omitted) ); see also Wong Sun v. United States , 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (same); and United States v. Powell , 847 F.3d 760, 768 (6th Cir.), cert. denied, --- U.S. ----, 138 S.Ct. 143, 199 L.Ed.2d 36 (2017) (same). A defendant *1006 does not only have standing under this doctrine in relation to her own property, but also in relation to property or information from third parties that was obtained as a result of illegality by police. See 6 Wayne R. LaFave, Search and Seizure, 11.4 (5th ed. 2017) ("[I]t is not the case that the fruit of the poisonous tree doctrine applies only when the defendant has standing regarding both the violation which constitutes the poisonous tree and separate standing regarding the evidence which constitutes the fruit of the poisonous tree."); see also Wong Sun , 371 U.S. at 487-88, 83 S.Ct. 407 (evidence seized from a third party's home should be excluded when that evidence would never have been found but for an illegal search).
As the name suggests, this doctrine holds that if the evidential "tree" is tainted by illegality, then so is its "fruit." This doctrine has been part of the canon of criminal law in the United States for nearly 100 years,[5] though it gained its famously colorful name later on, in 1939, in an opinion by Justice Frankfurter. Nardone v. United States , 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939) (coining phrase "fruit of the poisonous tree").
Although this doctrine has long stood as a defense of a person's Fourth-and Sixth[6] -Amendment rights, there are deleterious consequences for society that occur when probative evidence of a crime is excluded. As a result, courts are only to apply the exclusionary rule "where its deterrence benefits outweigh its substantial social costs." Strieff , 136 S.Ct. at 2061 (quoting Hudson v. Michigan , 547 U.S. 586, 591, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) ). Indeed, suppression of evidence must be a last resort. Id.
The first step in the analysis is to ask whether any piece of evidence is "derivative" of illegally seized evidence. Derivative evidence includes tangible or testimonial evidence that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection to the illegality becomes sufficiently attenuated. Murray v. United States , 487 U.S. 533, 536-37, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). To use the language of the metaphor, if later-obtained evidence does not grow from the bough of the poisoned tree, it cannot fairly be considered its fruit.
After determining whether each piece of evidence is derivative of the illegality, or whether it is the result of some independent line of investigation, this court must examine then whether police developed sufficient probable cause to arrest Gordon from sources independent of the illegal search (even though the affidavit for the arrest warrant was based solely on evidence from that illegal search). As well, the court must examine whether that probable cause was an intervening event sufficient to break the causal chain between the illegal search of the hotel room and the discovery of evidence during a search of Gordon's home. This analysis asks whether the taint of the illegal search has been effectively dissipated, and the relevant factors include temporal proximity of the illegal act and the consent, whether Miranda warnings were given, the presence of intervening circumstances, and the purpose and flagrancy[7] of official misconduct. See Brown v. Illinois , 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) ; and *1007 United States v. Lopez-Arias , 344 F.3d 623, 630 (6th Cir. 2003) ("To determine whether a consent to search was sufficiently attenuated from an illegal seizure such that the causal chain was broken, courts must consider factors such as the length of time between the illegal seizure and the consent, the presence of intervening circumstances, the purpose and flagrancy of the official misconduct, and whether the officers read the suspect his Miranda rights before he consented.").
C. Exceptions to the Exclusionary Rule
If evidence is shown to be derivative from an illegal search, and subject to possible exclusion, the court must then ask whether any of the exceptions to the exclusionary rule apply that call for the evidence to be admitted.
The exclusionary doctrine has four major exceptions: (1) when police acted in "good faith" reliance; (2) when subsequent information was gathered from a source independent of the poisoned tree; (3) when the information would have been inevitably discovered, regardless of the illegality; or (4) when there has been sufficient attenuation between the illegality and the discovery of the evidence such that the taint of the illegality has been dissipated. Herring v. United States , 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) (good faith); Murray v. United States , 487 U.S. 533, 537, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988) (independent source); Nix v. Williams , 467 U.S. 431, 443-444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) (inevitable discovery); Hudson v. Michigan , 547 U.S. 586, 593, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) (attenuation doctrine).
IV. Analysis
Applying the above standards, the Court will consider each category of evidence individually-MV-1's cell phone seized at the time of the hotel room search, MV-1's prior cell phone with a cracked screen, and items seized during the execution of a search warrant at Gordon's home-to assess whether it is a fruit of the poisonous tree, and, if it is, whether any exception to the exclusionary rule applies.
A. MV-1's Cell Phone Seized at the Hotel
MV-1's cell phone was taken from her during the hotel search. The affidavit for a search warrant of this phone states unambiguously: "The One white Samsung Galaxy S5 cell phone contained in a wallet case with butterflies on the cover was located in room 103 of Marvin's Gardens at 27650 Northwestern Hwy in the City of Southfield." Dkt. 28-2, Gov't Exh. A, Pg. ID 308 (emphasis added). No extensive analysis is necessary to determine that, as primary evidence seized during an illegal search, this phone is properly excluded, especially since this Court already undertook that analysis in its prior order.[8] This *1008 evidence was excluded by the Court's prior Order because "the officers here took purposeful and independent actions: they deliberately chose to enter Defendant's private hotel room without a warrant and in a scenario lacking exigent circumstances that would justify a warrantless entry," Op. and Order, Dkt. 20, Pg. ID 138. The phone was not discovered from an independent source-it was seized during the course of the illegal search. The phone would not have been inevitably discovered-there was no other line of investigation occurring at that time, except for the illegal search. There was no sufficient attenuation from the illegal search, as the illegal search was still occurring when this phone was seized.
MV-1's cell phone seized at the hotel was properly excluded by this Court's previous Order, because that cell phone was primary evidence seized during an illegal search, and no exceptions to the exclusionary rule were present.
B. MV-1's Old Cell Phone
Unlike MV-1's cell phone seized at the hotel, her old phone-the one her father turned into the police that had a cracked screen-was not discovered at the scene of the hotel. Rather, her father discovered this phone at his home, and called police the next day. See Sealed Exh., Dkt. 31, Pg. ID 335; Sealed Exh., Dkt. 32, Pg. ID 389. He informed police that he activated the phone and observed text messages between MV-1 and Gordon. Id. Police told MV-1's father to turn the phone off and bring it to the station, which he did. Id. MV-1's father also informed police at this time that his daughter admitted she had sexual intercourse with Defendant three times previously, when she was only 15-years-old. See Dkt. 28, Pg. ID 290.
The Court must determine whether this phone constitutes derivative evidence. This cell phone is tangible evidence that was acquired as an indirect result of the unlawful search-insomuch as the events of that early morning tipped the father off as to the evidentiary value of the old phone-and it was obtained very soon after the illegal search, such that the connection to the illegal search had not been sufficiently attenuated. For these reasons, the second cell phone is derivative evidence. See Murray v. United States , 487 U.S. 533, 536-37, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988).
If the second phone is indeed evidence derived from the primary illegality, the next consideration is whether it should be excluded, or if any of the exceptions to the exclusionary rule apply. Though it was derivative of the primary illegality, the phone was not obtained by police as a result of an investigation they were conducting, *1009 nor any that they were apparently about to conduct. It was rather literally dropped into the hands of the police by the father of MV-1. This phone was obtained from a source independent of the illegality, and therefore should not be excluded. Murray , 487 U.S. at 537, 108 S.Ct. 2529 (independent source doctrine).
It is noteworthy that excluding this second cell phone would accomplish no deterrent to police misconduct: whether the officers had gone in without a warrant, entered with consent, or waited until Gordon and MV-1 eventually emerged, MV-1's father acted independently in locating and turning the second phone over to the police. Suppressing evidence that the father of a victim turns in of his own accord-after the police misconduct is over-will not deter future police misconduct because that evidence arrived independently from that misconduct; it is likely that MV-1's father would have hunted for that phone once he was aware of what he perceived to be a threat to the safety of his daughter regardless of whether the police had violated the warrant requirement. At the same time, there would be a tremendous social cost to excluding this evidence. Weighing these considerations, the Court will not exclude MV-1's old cell phone. Strieff , 136 S.Ct. at 2061 (courts are only to apply the exclusionary rule "where its deterrence benefits outweigh its substantial social costs.").
Although the government also argues that the second cell phone should not be suppressed under the inevitable discovery doctrine, this is not a situation that calls for application of that doctrine. That doctrine is more concerned with police procedures or official protocols that would invariably have been pursued and which would have inevitably yielded evidence that has been otherwise illegally obtained. The seminal inevitable discovery case is Nix v. Williams , which concerned a suspect's Sixth Amendment right to counsel. 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). In that case, the suspect made an inadmissible confession outside the presence of his counsel regarding the location of a deceased girl's body. A search team was already underway and moving through a field toward where she was left by the suspect. The court found that because the body would have inevitably been found by the on-going search, evidence of her body and its condition was admissible even though it had been found based on interrogation conducted outside the presence of counsel. To exclude this piece of evidence based on the Sixth Amendment violation would have put the police in a worse place than if the violation had never occurred, because the body would have been located as a result of the on-going massive search. See United States v. Williams , 656 F. App'x 751, 753 (6th Cir. 2016) ("[P]olice who carry out a search that they should not have carried out should be put in the same, but no worse , position than they would have been in absent any error or misconduct.") (quoting United States v. Jenkins , 396 F.3d 751, 758 (6th Cir. 2005) (emphasis in original) ).
In another case cited by the Government, United States v. Kennedy , 61 F.3d 494 (6th Cir. 1995), a person attempted to traffic a large quantity of drugs and money in checked bags on an airplane. The two bags were mislabeled and sent to the wrong destination. The airline, upon realizing the mistake, and pursuant to their policies and procedures, attempted to open the bags to see if they contained any identifying information. The bags had locks on them, but the airline was able to open one of them, in which they discovered $176,000 in cash. They immediately reported this to the police department, who responded to the airport. There, an officer became suspicious of the second, as yet unopened bag, because he observed a strong odor emanating *1010 out from within. Concerned about the possibility of explosives inside the bag, this officer had the bag x-rayed, which revealed several dense, rectangular objects that appeared metallic. The officer then used a hammer and screwdriver to break open the lock on the suitcase, discovering that those bricks were in fact drugs. Because the policy and protocol of the airline would have resulted inevitably in the discovery of the drugs, and the airline would have then contacted police, the drugs were not excluded based on the illegal search. Absent the illegality, the police would have been in exactly the same situation, and exclusion would serve no deterrent effect.
The Kennedy court observed that the inevitable discovery doctrine applies when the government can demonstrate "either the existence of an independent, untainted investigation that inevitably would have uncovered the same evidence or other compelling facts establishing that the disputed evidence inevitably would have been discovered." United States v. Kennedy , 61 F.3d 494, 499 (6th Cir. 1995). While it is likely that, after his daughter was recovered in such circumstances, MV-1's father would have located and turned in her old cell phone, this is not the kind of inevitability that creates an exception to the exclusionary rule. Rather, the doctrine requires something more: an independent, untainted, in-process, investigation or protocol that would have inevitably located the evidence, or compelling facts establishing the inevitability.[9] There was no in-progress search or ongoing process that would inevitably have discovered MV-1's old cell phone. An element of happenstance attends the circumstances here: MV-1's father fortunately recalled, searched for, and found MV-1's old cell phone. That is not the kind of process-driven, investigative practice meeting the "compelling facts" establishing inevitability that the Kennedy court describes.
While it is the case that MV-1's old cell phone was discovered as a consequence of the illegal search of Defendant's hotel room, and therefore could be subject to exclusion, it is also clear that this evidence was obtained from a source independent of the illegality. MV-1's old cell phone is therefore admissible under the independent source exception to the exclusionary rule.
C. Evidence Seized from the Search of Defendant's House and Vehicle
Defendant seeks to exclude any evidence seized from the search of his home and vehicle pursuant to a search warrant because the affidavit for the warrant relied upon illegally seized evidence. The government contends that even if the search warrant relied on evidence from the illegal hotel room search, Gordon nevertheless voluntarily consented to the search of his home. Because Gordon was Mirandized and consented to the search, the government maintains that any evidence seized from the house should not be excluded. Further, the government argues that if Gordon's consent were somehow to be *1011 found invalid, the good faith exception should apply to validate the warrant's execution. Miranda warnings alone do not necessarily assure that a person's consent is a product of free will such that the causal connection between the illegality and the consent is broken, and the taint dissipated. Brown v. Illinois , 422 U.S. 590, 603, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). But the presence of Miranda warnings is part of the analysis for whether the taint has been effectively dissipated. Id. ; and Lopez-Arias , 344 F.3d at 630.
D. Illegally Seized Evidence Cannot Provide Probable Cause
Important to our consideration of the search of Defendant's home is that the government effectively had two lines of investigation underway: the first deriving from the illegal search of the hotel room, and the second deriving from the independently-acquired old cell phone. Everything obtained through the first line of investigation was already ordered suppressed as fruit of the poisonous tree. That means that any mention of these items or the information learned from them in affidavits for warrants for further searches must be excised from those affidavits, and the court must then consider whether the redacted affidavits contain the probable cause necessary for approval of the warrants. United States v. Williams , 656 F. App'x 751, 753-54 (6th Cir. 2016) (Courts must excise illegally obtained information from the affidavit and then decide whether the remaining legally obtained information sufficiently supports a finding of probable cause to search). To identify sufficient probable cause, the Court "is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before it, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. (citing Illinois v. Gates , 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ) (internal punctuation omitted).
Here, the affidavits for the search warrants of MV-1's cell phones, Gordon's home, and Gordon's car, and the affidavit for the arrest warrant of Gordon are solely supported by illegally-obtained information. Even though additional evidence was available-such as the information relating to the second, legally-obtained cell phone-the agents did not include it in their affidavits. When the information obtained from the illegal search is excised from the affidavits, the remaining declarations do not come close to establishing probable cause for search or for arrest.
Take, for example, the affidavit supplied by FBI Agent Nichols in support of an application for a criminal complaint and arrest warrant. Once all illegally-obtained information is excised, one is left with the following:
• Agent Nichols has specialized training relating to internet crimes and exploitation of children, and he believes there is probable cause to support the criminal complaint and the arrest of Defendant.
• Southfield Police Department responded to a welfare check at a hotel for a 16-year-old girl at the request of her father, who believed his daughter was in the hotel with an older man from Indiana she had met online.
• At the hotel, police officers confirmed that a car in the parking lot belonged to a man from Indiana named Robert Gordon, and that Gordon was staying in a room at the hotel.
• Officers knocked, but no one answered, so they obtained a key from the front desk and entered the room.
*1012 • Officers obtained records showing that Gordon had stayed at the hotel previously, as well as another nearby hotel several years earlier.
• Southfield Police shared their records and reports with the FBI, and the FBI obtained a photograph of Gordon from his driver's license records.
• Agent Nichols is aware that the age of consent for sexual intercourse in Michigan is sixteen years old.
• Whisper, Skype, and text messaging are applications that use the internet.
Standing alone, these facts would have been insufficient to establish probable cause to arrest Defendant for any crime.[10]
Consider also the affidavit for the search warrant of Defendant's home and vehicle. Once all illegally-obtained information is excised, one is left with the following:
• The affiant is an FBI agent with substantial experience relating to crimes involving technology, cyber crimes, child exploitation, child pornography, and kidnapping.
• Affiant believes this affidavit establishes probable cause to search a person's home for evidence of crimes relating to sexual conduct with a child and production of child pornography.
• Extensive explanation of the definitions of the crimes the affiant believes the person committed.
• A recounting of the affiant's technological background, and an explanation of how people use technology to make, store, and transmit child pornography using home computers, cell phones, and the internet, generally.
• Police officers went to a Michigan hotel to conduct a welfare check on a 16-year-old girl at the request of her father, who believed she was in the hotel with an older man from Indiana she met online.
• While at the hotel, officers confirmed that a car in the parking lot was owned by an older man from Indiana named Robert Gordon and that he was staying in a room in the hotel.
• Officers knocked on his room door repeatedly, but received no answer at all, so they used a key obtained from the hotel to enter the hotel room.
• Officers obtained records showing Robert Gordon stayed at this hotel and another area hotel several times over the past two years, and twice six years ago.
• Officers from Southfield Police gave their records to the FBI, and the FBI obtained a photograph from Robert Gordon's driver's license record.
• Affiant knows that 16 is the age of consent in Michigan.
• Specific requests to search and open items belonging to Robert Gordon.
This too is clearly insufficient to support probable cause to believe that evidence of a crime would be found in a person's home or vehicle.
Without a sufficient basis of probable cause, the warrants are not valid and evidence seized pursuant to those warrants may not be used unless there is an exception to the warrant requirement that would apply.
*1013 E. If Defendant's Arrest Was Pursuant to Probable Cause, His Consent May Authorize the Search of his Home
If the search and arrest warrant affidavits lacked probable cause, evidence derived from those warrants would have to be suppressed unless either (a) there was another legal justification for the search of Defendant's house, such as consent; or, (b) the agents were justified in relying on the inadequate warrants under the good faith exception. For the reasons discussed below, the Court concludes that (regardless of the infirmities of the affidavit for the arrest warrant of Defendant), the agents had probable cause to arrest Defendant. Because Defendant's arrest was upon probable cause, there was no illegality to taint his consent to search. Defendant's consent authorized the search of his home, and evidence from the search may be used even though the search warrant affidavit was inadequate. Because the Court has concluded that the evidence seized from Gordon's home is admissible, there is no need to definitively decide the question of whether the officers could have relied upon the warrants under the good faith exception.
1. Gordon's Arrest was Pursuant to Probable Cause
For Gordon's consent to search his home to be valid, the Court must first determine whether his arrest was valid. If his arrest is illegal, then the consent would be an inadmissible fruit of that poisonous tree. As already mentioned, the affidavit for the arrest warrant of Gordon was solely supported by illegally obtained information. The remaining information on that arrest warrant affidavit does not support probable cause for arrest.
But the operable requirement for arrest is probable cause,[11] not the existence of a valid arrest warrant. If police have developed probable cause that a person has committed a crime, they are authorized to make an arrest. Probable cause necessary to justify an arrest is defined as "whether at that moment the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense." Radvansky v. City of Olmsted Falls , 395 F.3d 291, 302 (6th Cir. 2005) (citing Beck v. Ohio , 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) ). The Court must examine the existence of probable cause "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. , citing Klein v. Long , 275 F.3d 544, 550 (6th Cir.2001), cert. denied , 537 U.S. 819, 123 S.Ct. 95, 154 L.Ed.2d 26 (2002) (internal citations omitted); see also D.C. v. Wesby , --- U.S. ----, 138 S.Ct. 577, 586, 199 L.Ed.2d 453 (2018) (To determine whether an officer had probable cause for an arrest, "we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause."). This examination "deals with probabilities and depends on the totality of the circumstances," and it is "a fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules." Wesby , 138 S.Ct. at 586 (citing Maryland v. Pringle , 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) ; and Gates , 462 U.S. at 232, 103 S.Ct. 2317. The bar for probable cause is not especially high-it requires only a "probability or substantial chance of criminal activity, not an actual showing of such *1014 activity." Gates , 462 U.S. at 243-244, n. 13, 103 S.Ct. 2317 ; Kaley v. United States , 571 U.S. 320, 338, 134 S.Ct. 1090, 188 L.Ed.2d 46 (2014).
In the instant case, the original search of the hotel room and seizure of evidence was conducted by the Southfield Police Department. The Southfield Police Department also took possession of the second cell phone and received the information about it from MV-1's father. Defendant was later arrested at his place of work by agents of the Federal Bureau of Investigation. The affidavit for the warrant to arrest Defendant was sworn out by an FBI agent, and is supported solely by information that was gathered through the illegal search. However, when police became aware of the existence of the second cell phone-and then came in to actual possession of it-they also came in to possession of probable cause that Gordon had enticed or attempted to entice MV-1 to engage in sexual activity when she was under age, because the cell phone showed that Gordon allegedly used multiple cell-phone-based social media platforms to engage in discussions with MV-1 toward that purpose.
FBI Agent Nichols lists 18 U.S.C. § 2422(b) in his affidavit as one of the crimes for which the FBI seeks to arrest Gordon.[12] That section states, in relevant part, "Whoever, using the mail or any facility or means of interstate or foreign commerce ... induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so," is liable for fines and imprisonment.[13] "Sexual activity for which any person can be charged with a criminal offense" includes the production of child pornography, per 18 U.S.C. § 2256(8).[14] "Minor" means "any person under the age of eighteen years," and "sexually explicit conduct" includes, in relevant part, graphic[15] sexual intercourse (including genital-genital, oral-genital, anal-genital, or oral-anal); or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited; or graphic or lascivious simulated masturbation; or graphic or simulated lascivious exhibition of the genitals or pubic area of any person.[16]
Therefore, if the FBI had adequate probable cause to arrest Defendant for violation of 18 U.S.C. § 2422 -independent of the information presented in the affidavit for the arrest warrant-then the arrest is still validly supported by probable cause,[17] and Gordon's consent is not tainted *1015 by any unlawful arrest. Even when evidence demonstrates that not every officer involved in an investigation has actual knowledge of certain requisite facts, the Sixth Circuit imputes "collective knowledge" among multiple law enforcement agencies. United States v. Lyons , 687 F.3d 754, 766 (6th Cir. 2012). FBI Agent Nichols states in his affidavit, "Because this criminal complaint is for the limited purpose of securing an arrest warrant, I have not included each fact known to law enforcement concerning this investigation[,]" and "I base this criminal complaint on my own training and experience, my own observations, and the reports of other sworn law enforcement officers." See United States v. Gordon , 17-mj-30443-DUTY, Dkt. 1 (sealed).
The FBI had adequate probable cause to arrest Defendant based on (1) MV-1's father's statements that MV-1 admitted to him she had sex with defendant when she was 15 years old, (2) MV-1's father's statements that he viewed text messages between MV-1 and Defendant on the second cell phone, and (3) MV-1's father's statement that MV-1 was only 15 years old when she used that phone. Though some of this evidence might be inadmissible as hearsay, it may be used to establish probable cause.[18] Taken together, this evidence provides probable cause to arrest Defendant for violation of 18 U.S.C. § 2422 (b) : knowingly persuading, inducing, enticing, or coercing-or attempting to do so-an individual who has not attained the age of 18 years, to engage in a sexual activity for which any person can be charged with a criminal offense.
Because the FBI had probable cause to believe Gordon had committed a crime, his arrest is valid, even though the affidavit supporting the arrest warrant only contained illegally obtained information. As Defendant's arrest was validly based on properly obtained evidence that provided independent probable cause, the arrest presented an intervening event that is sufficient to break the chain of causality from the illegal search of the hotel room to Defendant's consent to search his home. Therefore, the taint of the illegality had been dissipated, and the Court next considers whether his consent was validly and voluntarily given.
2. Gordon's Consent to the Search was Knowing and Voluntary
In general, whether consent to a search was voluntarily given is a question of fact. United States v. Buchanan , 904 F.2d 349, 355 (6th Cir. 1990) (citing Schneckloth v. Bustamonte , 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) ). The government has the burden of showing that consent was not contaminated by any duress, coercion, or trickery. United States v. McCaleb , 552 F.2d 717, 721 (6th Cir. 1977). Whether a consent has been freely and voluntarily given must be determined from the "totality of all the circumstances." Schneckloth , 412 U.S. at 227, 93 S.Ct. 2041. Important here is also whether the arrestee was prevented from consulting with an attorney prior to giving consent. Buchanan , 904 F.2d at 356 (opportunity to consult with attorney prior to giving consent was crucial factor in finding the taint of the illegal entry sufficiently attenuated). In the instant case, Defendant *1016 was not prevented from consulting his attorney, and expressed a desire to be cooperative. See Dkt. 28, Pg. ID 291-292; Dkt. 28-3, Pg. ID 314; Dkt. 28-4, Pg. ID 315. In fact, in addition to giving consent to search his home, Defendant signed a waiver of his Miranda rights, and has not made so much as a passing allegation that this act was anything but knowingly and voluntarily conducted. See id. There is no reason to believe that Gordon's consent was contaminated by any duress, coercion, or trickery, or that he was prevented from consulting with counsel if he so desired, because he expressly waived his right to do so.
Because the arrest of Defendant was valid, and Defendant's subsequent signed consent to search his home was valid, any evidence discovered in the home may be presented at trial unless otherwise subject to objection.
Even though Defendant's arrest followed chronologically from the illegal hotel search, an intervening event-the production of adequate probable cause from admissible sources of information independent of the initial illegality-renders Defendant's consent to search his home valid, and any evidence found may be considered. Strieff , 136 S.Ct. at 2058.
F. Alternatively the Good Faith Exception Would Likely Apply
Normally, a warrant issued by a magistrate judge "suffices to establish that a law enforcement officer has acted in good faith in conducting the search." United States v. Leon , 468 U.S. 897, 922-23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (quoting United States v. Ross , 456 U.S. 798, 823, n. 32, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (punctuation omitted). However, the Sixth Circuit identifies four situations in which the Supreme Court has considered a search pursuant to a warrant to be illegal: "(1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities;[19] (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable;[20] and, (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid." See United States v. Laughton , 409 F.3d 744, 748 (6th Cir. 2005) ; citing Leon , 468 U.S. at 914-923, 104 S.Ct. 3405 ; United States v. Savoca , 761 F.2d 292 (6th Cir. 1985) ; and United States v. Weaver , 99 F.3d 1372, 1380 (6th Cir.1996) ).
Situations 1, 2, and 4 clearly do not apply here, as there is no allegation that the affidavit contained false information, that the Magistrate Judge abandoned his neutral and detached role and served as a "rubber stamp," or that the affidavit is so facially deficient that it cannot reasonably be presumed to be valid. The argument against allowing the good faith exception on these facts would have to be that "the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable."
*1017 If law enforcement officers reasonably believed in good faith that evidence they had seized was admissible at trial, the 'imperative of judicial integrity' is not offended allowing the government to use that evidence in prosecution. United States v. Peltier , 422 U.S. 531, 537-38, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975). In the instant case, the evidence obtained in reliance on the home search warrant should not be excluded if (1) the officers believed in good faith that the evidence was admissible, and (2) the deterrence benefits of excluding the evidence does not outweigh the substantial social costs. Peltier , 422 U.S. at 537-38, 95 S.Ct. 2313 ; and Strieff , 136 S.Ct. at 2061.
The purpose of the exclusionary rule is to deter unlawful police conduct, so evidence obtained from an illegal search should be suppressed "only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." Savoca , 761 F.2d at 295-96. The police officers who responded to the hotel may properly be charged with the knowledge (or are expected to have such knowledge) that their search was-at the time-illegal because they entered the equivalent of a home without either a search warrant or exigent circumstances. But here the question is whether the agents who executed the search warrant of Defendant's home and arrested him on a facially valid warrant should be charged with knowledge that the warrants were invalid. Id. ("By imposing an objective standard, Leon indicated that courts evaluating an officer's conduct must charge the officer with a certain minimum level of knowledge of the law's requirements.") (citing Leon , 468 U.S. at 923, 104 S.Ct. 3405 ).
The first requirement of the good faith exception is that officers reasonably believed in good faith that the evidence they were collecting would be admissible. While it is clear that the police officers who entered Defendant's hotel room without a warrant should have known that a warrant or exigent circumstances were required, it is a much closer question whether the federal agents who later obtained a search warrant based on the evidence seized from that illegal search should have caught the fact that their colleagues had erred-particularly when their affidavit would have been reviewed and authorized by an Assistant U.S. Attorney and a United States Magistrate Judge-both of whom are experienced attorneys trained in the criminal law who did not catch the same error, but rather gave the affidavit their stamp of approval.
Of course, the Court does not need to decide the issue on this factor, because the Defendant consented to the search. While the applicability of the good faith exception under these circumstances may be a close call, the record supports a conclusion that the officers in this case reasonably believed in good faith that the evidence they were collecting pursuant to a validly-issued warrant would be admissible. It does not suggest that the agents would necessarily have realized that the initial search was illegal, or that the evidence they were collecting as a result of that search was fruit of the poisonous tree, and that it would ultimately be excluded. Such a chain of suppositions is simply a "bridge too far." If Defendant had not consented to the search, the evidence seized pursuant to the inadequate search warrant would not be subject to suppression because the good faith exception would then apply.
V. CONCLUSION
For the foregoing reasons, and those explained in its previous order, the Court reiterates that the warrantless entry into Defendant's hotel room violated his Fourth *1018 Amendment rights. The Court now also finds that the taint of that unlawful entry had not dissipated when police seized MV-1's cell phone at the hotel. That cell phone and any evidence found on it are subject to exclusion. The Court further finds that MV-1's other cell phone (the one turned over by her father) was discovered from a source independent of the illegality, that police developed adequate probable cause from that independent source to arrest Defendant, and Defendant's consent to search his home and vehicle was validly given. That second cell phone and any evidence found on it, as well as any evidence seized at Defendant's residence or in his vehicle, may be admitted. Accordingly, Defendant's Motion to Suppress Derivative Evidence (Dkt. 25) is GRANTED IN PART as it pertains to MV-1's cell phone seized at the hotel, and DENIED IN PART as it pertains to MV-1's old cell phone, and the evidence seized in the search of Defendant's home or vehicle.
Accordingly, the Court sets the following dates in this matter:
 PRETRIAL CONFERENCE: October 11, 2018 at 2:00 PM TRIAL: October 23, 2018 at 9:00 AM 
The Court finds that additional time is necessary for parties to reasonably prepare for trial, and that the additional time shall be deemed excludable delay under the provisions of the Speedy Trial Act, 18 U.S.C. § 3161. Pursuant to 18 U.S.C. § 3161(h)(7)(A), the ends of justice served by continuing these dates outweigh the best interests of the public and defendant in a speedy trial. Failure to continue these dates would deny counsel for the defendant the reasonable time necessary for effective preparation, taking into account the exercise of due diligence. See 18 U.S.C. § 3161(h)(7)(A).
The trial will be set for October 23, 2018. Under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), the period of delay resulting from this continuance shall be excluded in computing the time within which the trial must commence.
IT IS ORDERED that the period from the date of this Order, September 12, 2018 to the new trial date of October 23, 2018, shall be excluded from computing the time within which the trial must begin under the provisions of the Speedy Trial Act, 18 U.S.C. § 3161. The Court finds that an extension of these dates serves the ends of justice by allowing defense counsel time to interview potential witnesses and prepare for trial, and allowing the parties the opportunity to engage in plea negotiations. The Court finds that the ends of justice served by the granting of such an adjournment will outweigh the best interests of the public and the defendants in a speedy trial. 18 U.S.C. § 3161(h)(7)(A).
SO ORDERED.

A family member reported to the parents that MV-1 had posted information on her "Snapchat" account that she was with "Robert"-an older white man-at the motel. Snapchat is a social media messaging application, which allows users to create multimedia messages, such as a photograph or a short video, and edit that multimedia to include text captions and other effects. Users are allowed to share that multimedia, called "snaps," to a private or semi-public group of other users. The primary concept behind the application is the capturing of moments: the multimedia created by users are only available for a short time before they become inaccessible.

These items were the subject of defendant's previous motion to suppress, which was granted by this court. That order suppressed and excluded "all evidence obtained as a result of the officers' illegal search." Op. and Order, Dkt. 20, Pg. ID 45.

This Exhibit contained redacted versions of the Affidavits that blocked out personal identity information. To ensure that the Court fully understood the content of the affidavits, the Court ordered the Government to produce complete and unredacted versions of the Affidavits. See Dkt. 31. For purposes of this Order, the Court has used the unredacted affidavits.

Cf. Murray v. United States , 487 U.S. 533, 536-37, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988) (derivative evidence includes tangible or testimonial evidence that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection to the illegality becomes sufficiently attenuated).

Silverthorne Lumber Co. v. United States , 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

Though the instant case is concerned with the defendant's Fourth Amendment right to be free of illegal search and seizure, an important holding in the consideration and analysis of the instant case is found in Nix v. Williams , 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), which was primarily concerned with that defendant's Sixth Amendment right to counsel.

The "Purpose and Flagrancy" component is difficult to define precisely. Rebecca Laitman, Fourth Amendment Flagrancy: What It Is, and What It Is Not , 45 Fordham Urb. L.J. 799, 802 (2018) ("The Supreme Court has not clearly articulated what kind of police conduct is flagrant in the context of the Fourth Amendment's exclusionary rule."). Since a major consideration for the Court is the deterrent effect that suppression of evidence will have on illegal behavior by police, this factor is possibly disproportionately important in the analysis. Herring v. United States , 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."). The Supreme Court, in its analysis of the Strieff case mentioned only that the officer was "at most negligent," and that his illegal act was not part of "any systemic or recurrent police misconduct." Utah v. Strieff , --- U.S. ----, 136 S.Ct. 2056, 2058, 195 L.Ed.2d 400 (2016).

The Government argued during a hearing held before the Court on August 7, 2018 that the phone was not found in the hotel room, but rather on MV-1's person. In support of this, the government entered what was marked then as Government Exhibit A, a Southfield Police Department Case Report which included narratives about the events of August 27, 2016 from the responding officers. In his narrative, Specialist Hendricks wrote that he collected several items, including "A pink and white Samsung cell phone belonging to [MV-1] found on her person. Passcode in property remarks." Sealed Exh., Dkt. 32, Pg. ID 388. Nothing in Specialist Hendricks' account mentions where MV-1 was when he collected the phone "found on her person." From the report, it is unclear whether MV-1 was inside of the hotel room or out in the parking lot when the police took her phone. Either way, the phone was clearly seized as part of the entry and search of the hotel room, which the Court found to be illegal. Even if MV-1 was standing in the parking lot when the police seized her cell phone from her, they only did so as an immediate result of the investigation that started with the search of the hotel room. No intervening event occurred between the search of the room and the seizure of MV-1's cell phone that could be said to break the chain of causation between the illegality and the acquisition of the cell phone.

Cf. United States v. Haddix , 239 F.3d 766, 769 (6th Cir. 2001) ("[A] successful inevitable discovery argument requires the government to proffer clear evidence of an independent, untainted investigation that inevitably would have uncovered the same evidence as that discovered through the illegal search.") (quoting United States v. Dice , 200 F.3d 978, 986 (6th Cir.2000) (internal punctuation omitted) ) also United States v. Martinez-Gallegos , 807 F.2d 868, 870 (9th Cir. 1987) ("[The inevitable discovery doctrine] applies when the prosecution can show by a preponderance of the evidence that the evidence would have been discovered inevitably by lawful means.") (citing Nix v. Williams , 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) ; and United States v. Andrade , 784 F.2d 1431, 1433 (9th Cir. 1986) ).

As noted by Agent Nichols, the age of consent in Michigan is 16, so the presence of a 16-year-old girl in a hotel room with a 45-year-old man-even for the purpose of engaging in sexual intercourse-does not, on its own, create probable cause. See M.C.L. § 750.520.

Smith v. City of Wyoming , 821 F.3d 697, 714-15 (6th Cir. 2016) (An arrest made without probable cause violates the Fourth Amendment.)

Smith v. City of Wyoming , 821 F.3d 697, 715 (6th Cir. 2016) ("To determine whether these facts gave rise to probable cause, we must consider the particular crime for which the officers arrested [defendant].") (citing Ingram v. City of Columbus , 185 F.3d 579, 594 (6th Cir.1999) ).

18 U.S.C. § 2422 (b) - Coercion and enticement.

"The term "sexual activity for which any person can be charged with a criminal offense" includes the production of child pornography, as defined in section 2256(8)." 18 U.S.C. § 2427.

"Graphic, when used with respect to a depiction of sexually explicit conduct, means that a viewer can observe any part of the genitals or pubic area of any depicted person or animal during any part of the time that the sexually explicit conduct is being depicted[.]" 18 U.S.C. § 2256(10) (internal quotation marks omitted).

18 U.S.C. § 2256 (1), (2)(B)(i), (B)(ii), (B)(ii)(II), (B)(iii).

Wesley v. Campbell , 864 F.3d 433, 439 (6th Cir. 2017) (An officer has probable cause to make an arrest when facts and circumstances within his knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent person in believing that the petitioner had committed or was committing an offense) (citing Beck v. Ohio , 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) ).

The Supreme Court has held that hearsay, though inadmissible at trial, is allowed for purposes of establishing probable cause. See Kaley v. United States , 571 U.S. 320, 338, 134 S.Ct. 1090, 188 L.Ed.2d 46 (2014) ; see also Costello v. United States , 350 U.S. 359, 363-64, 76 S.Ct. 406, 100 L.Ed. 397 (1956) (Defendant could be required to stand trial, and conviction could be sustained, even if only hearsay evidence was presented to grand jury which indicted him.).

A warrant issued by a magistrate who acts as a mere "rubber stamp for the police," see Aguilar v. Texas , 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), or as an "adjunct law enforcement officer," and who fails to "manifest that neutrality and detachment demanded of a judicial officer," see Lo-Ji Sales, Inc. v. New York , 442 U.S. 319, 326-27, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979), is invalid.

If the information contained in the affidavit does not add up to probable cause, even after according the proper deference to the magistrate's determination the warrant is invalid. See Gates , 462 U.S. at 236, 103 S.Ct. 2317.